Nott, J.,
delivered the opinion of the court:
The case, briefly stated, is this: In 1864, a contractor agreed with the Quartermaster-General, to deliver a large number of mules in the city of Washington. He endeavored to perform according to the very letter of his contract; but when the mules, which he had brought from Kentucky, reached the confines of the city, the capture of Washington by the forces of Early was imminent. The agents of the contractor sought to enter the city and deliver the mules, but were stopped at the picket-line and turned back, under an order of the military governor of. Washington forbidding all persons to approach the defenses or *520 enter the camps. The agents notified the picket-guard that the mules were for the military service of the United States; that they were to be delivered in Washington under a contract$ that the enemy’s cavalry was approaching; and they demanded leave to send one of their number to the Quartermaster-General to procure an order for their admission. The request was refused and the mules were captured, and in part lost to the contractor. The question before the court is, on whom shall this loss fall ? The court is satisfied that the contractor was acting according to the letter and spirit of his agreement; that his agents did all that men in such perplexities could reasonably be expected to do, and that the contractor would have fully performed all that his agreement required of him if he had not been directly prevented by the military forces of the United States.
The first case in this court where the public acts of the Government were set up as a breach of a contract was that of Dem-mg, (1 C. Ols. R., p. 190.) The alleged interference was by the legislative branch of the Government. The contractor had agreed to furnish certain articles to the Government which could only be procured by importation. Between the making of his agreement and the time fixed for performance, Congress imposed an additional duty on all such articles, and the contractor set this up as a breach or interference which had cast additional expense upon him in the performance of his contract. The court held that the general enactments of Congress are not to be construed as evasions of a particular contract; that a contract between the Government and a private party cannot be specially affected by the enactment of a general law $ that such a statute bears upon such a contract as it bears upon all similar contracts between individuals, and affects it in no other way; and that the Government as a contractor is not responsible for the Government as a law-giver.
The question in another form was again presented in the case of Jones & Brown, (1 C. Ols. R., p. 383.) There the acts complained of were by the executive branch of the Government, and consisted in the withdrawal of troops from the Indian country, and the consequent inability of the contractors to complete a public survey. The court extended the rule in Deming’s Case to executive as well as legislative acts, and held that it is a principle, applicable to all cases, that the United States as a con *521 tractor cannot be held liable for the public acts of the United States as a sovereign, and that whatever acts the Government may do, be they legislative or executive, so long as they are public and general, cannot be deemed specially to alter, modify, obstruct, or violate the particular contracts into which it enters with individuals.
Notwithstanding the peculiar hardships of the case now before us, and with a full appreciation of the good faith of the contractor, his diligence and due observance of all the obligations of his agreement, we are satisfied, after mature deliberation, that it cannot be distinguished in principle from those which have been cited above. In the recent decision in the Sot Springs Gases it was held that the Government might acquire a vested right under a statute as a third person “ in its corporate or proprietary, as distinguished from its legislative, character. (10 C. Cls. P., p. 370.) This double character of the Government cannot be lost sight of in any of its transactions. The Quartermaster-General was the contracting agent of the United States, and bound the corporation. For his acts, within the scope of his authority, the Government, as a contracting party, is liable. But neither the Quartermaster-General nor any of his assistants, nor any other contracting-agent of the Government, interfered with the claimant or prevented performance on his part. The military governor of Washington, on the other hand, was not a contracting-agent of the Government, and his acts were limited strictly to the public defense. He did not interfere with this contractor as such. His order was general, applying to all persons, and affecting the claimant precisely as though he had contracted with any private corporation. It has been repeatedly held in this court, and often reiterated by the Supreme Court, that the Government, as a contractor, can be held to no greater liability than other contractors ; and that seems decisive of the case now before us; for the Government, as contractor, did nothing which would have cast a legal liability upon any other contractor.
We have reached this conclusion irrespective of the decision of this court in Grant’s Case, (1 C. Cls. R., p. 61,) and its affirmance by the Supreme Court. (7 id., p. 53.)
There it was held that where goods are captured in transitu the loss must fall upon him in whom the property is; that a court cannot look beyond the proximate cause of loss, notwith *522 standing that the Government, as contractor, had so hindered and delayed the claimant as to bring his goods within the danger which occasioned the loss. Applying that case to this, it is evident that the'claimant could not-recover for his mules captured by the public enemy. His damages, at most, would be limited to the direct expenses occasioned by such delay.
The judgment of the court is that the petition be dismissed.