STANDARD ACCIDENT INS. CO. et al.
v. UNITED STATES.

No. 46004.

Court of Claims.

April 2, 1945.

Writ of Certiorari Denied June 4, 1945.

M. Carl Levine, of New York City (David Morgulas, of New York City, on the brief), for plaintiff.

S. R. Gamer, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen. (E. E. Ellison, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHATAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

The petition in this case alleges three causes of action by plaintiff, Standard Accident Insurance Company, the third cause of action being also the first and only cause of action alleged by plaintiff Albert E. McKenzie as trustee in bankruptcy. Defendant's demurrer is directed to the third cause of action of the Standard Accident Insurance Company and as a first cause of action by Albert E. McKenzie as trustee in bankruptcy.

The petition in the first cause of action on behalf of the Standard Accident Insurance Company, as surety on a performance bond of the Graves-Quinn Corporation under a contract with defendant, claims $72,976.07 as the excess costs incurred by reason of alleged misrepresentations in the specifications and drawings as to conditions at the site of the work. The second cause of action is for recovery of $15,245 deducted by defendant as liquidated damages for delay in completion of the contract. The third claim, made as a third cause of action by the Standard Accident Insurance Company and as a first cause of action by Albert E. McKenzie as trustee in bankruptcy in the Graves-Quinn Corporation, is for damages of $397,200 for alleged breach of the contract by the defendant.

On September 14, 1940, the Graves-Quinn Corporation, hereinafter sometimes referred to as the contractor, entered into a contract with the Government through the Quartermaster Corps of the War Department for construction of temporary housing at Harbor Defenses at Boston, Mass., Narragansett Bay, and at Newport, Rhode Island, and Portland, Maine, for the consideration of $1,008,800.

The contractor was adjudicated a bankrupt by the U. S. District Court for the Second District of New York June 19, 1942, and Albert E. McKenzie, one of plaintiffs herein, is the duly appointed and acting trustee in bankruptcy.

The allegations in the petition in support of the claim for damages for breach of contract as the third cause of action by the Standard Accident Insurance Company and as a first cause of action by Albert E. McKenzie, as trustee in bankruptcy (hereinafter referred to as "the third cause of action"), are that immediately after award of the contract of September 14, 1940, defendant, through its duly authorized agencies, made contracts with other contractors for the construction of various Government facilities in the immediate vicinity of the project covered by the contract with the Graves-Quinn Corporation, which other contracts were, for the most part, let upon a cost-plus fixed-fee basis.

It is further alleged that by reason of the awards of such other contracts the Graves-Quinn Corporation was unable to employ laborers and mechanics in the normal course, unless it permitted laborers to be employed for longer hours, resulting in payment of overtime wages because such workmen were drawn to the cost-plus projects.

It is further alleged that as a result of the making of these cost-plus contracts the Graves-Quinn Corporation was left with insufficient sources from which to draw its laborers; and that an additional result of the making of these cost-plus contracts by the Government was to raise material prices in the immediate vicinity, thereby forcing the Graves-Quinn Corporation to pay higher prices for material necessary for the performance of its lump-sum contract.

It is further alleged that at the time defendant advertised for bids on the contract with the Graves-Quinn Corporation, defendant knew that it intended to enter into such cost-plus contracts for other projects, and that any contractor having a lump-sum contract in the immediate vicinity would be compelled to meet the abnormal circumstances not originally contemplated. It is also alleged that it was contemplated and understood that the Government would do nothing which would interfere or prevent the ordinary and contemplated method of performing the contract of September 14, 1940, and that it cost the contractor $397,200 more to complete the work called for by that contract than it would have cost had the contract been carried out as originally contemplated. The alleged damages of $397,200 above mentioned represent the difference between

the alleged cost of $1,310,547.27 of performing the contract of September 14, 1940, and $913,347.27 which, it is alleged, such performance would have cost had the Government not entered into certain other cost-plus fixed-fee contracts in the same vicinity under authority of the National Defense Acts approved June 28 and July 2, 1940, and the appropriation act approved September 9, 1940 for carrying these acts into effect.

Plaintiffs contend in opposition to the demurrer that the making of such cost-plus contracts constituted a breach of the lump-sum contract of September 14, 1940, in that the making of such contracts by the United States through agencies of the War Department made it difficult for the contractor to obtain an adequate supply of labor, thereby compelling it to work its laborers overtime at increased wages; to obtain material in the normal course, and increased the cost of the needed materials. In support of this contention it is argued that at the time the Government advertised for bids for the lump-sum contract it had full knowledge that it intended to enter into very substantial construction contracts at Camp Edwards and Camp Devens on a cost-plus fixed-fee basis and that the Government knew that as a result thereof any contractor having a lump-sum contract in the immediate vicinity would be compelled to meet the above-mentioned circumstances not contemplated or agreed to by the contractor; that the contractor had the right to expect that the War Department had entered upon a policy of awarding lump-sum contracts in the immediate vicinity of the construction work; that the War Department then had two alternatives and, having adopted one, the contractor had no reason to believe that immediately thereafter the Government would adopt the policy of entering into cost-plus fixed-fee contracts.

We think these contentions of plaintiffs are not sufficient to show that there was a breach of the contract in suit by the defendant which would entitle the contractor or plaintiffs to recover the alleged increased performance costs as damages. The allegation of the petition that "It was contemplated and understood that the Government would do nothing which would interfere or prevent the orderly and contemplated method of performing the contract" of September 14, 1940, cannot be taken as an allegation of fact well pleaded and admitted for the purpose of the demurrer that it was contemplated and understood by the United States that it would not enter into such other contracts as might be deemed necessary to carry out and fulfill the requirements of existing acts of Congress making provisions for the National Defense. If, by the allegation above quoted, plaintiffs intended to allege such a stipulation and undertaking on behalf of the United States it is clear that such a stipulation would have been in violation of the acts of Congress and, therefore, beyond the authority conferred upon the contracting officer. It is not alleged that the contract in suit was signed by the Secretary of War, who was the officer charged by statute with the duty of determining whether, in the interest of the Government and the National Defense, cost-plus contracts and contracts without advertisement should be made. However, the contract in suit contains no express stipulation or warranty that contracts on a cost-plus fixed-fee basis would not be made if necessary, and none can be implied. Both parties knew of the existence of the National Defense and Appropriation acts of June 28, July 2, and September 9, 1940, and it must be assumed that in making the lump-sum contract of September 14, 1940, they knew also that the carrying out of those acts by contract, or otherwise, would be a sovereign act and not a breach of the contract then being made. Under the terms of the contract in suit, the contractor assumed the risk of meeting the changed conditions of which complaint is now made. It cannot be said, therefore, as plaintiffs contend, that the Graves-Quinn Corporation had a legal right to expect, when it made its bid on September 10 and signed the contract on September 14, 1940, that the War Department had entered upon a binding policy of awarding lump-sum contracts in the immediate vicinity of the contractor's construction and could not thereafter, without breaching the contract of the contractor, enter into other contracts on a cost-plus basis pursuant to and in accordance with the National Defense statutes which would have the effect of making performance of a lump-sum contract more expensive than the contractor had contemplated at the time he made his bid. Plaintiffs' contract expressly recognized the existence and effect of the National Defense and Appropriation acts above mentioned by deleting from the

standard contract form art. 11 prohibiting the working of any laborer or mechanic more than eight hours in any calendar day.

As early as Jones v. United States, 1 Ct.Cl. 383; Id., 2 Ct.Cl. 605, this court held at .page 384 of 1 Ct.Cl., that "Whatever acts the government may do, be they legislative or executive, so long as they be public and general, cannot be deemed specially to alter, modify, obstruct or violate the particular contracts into which it enters with private persons." The same rule was applied in Horowitz v. United States, 58 Ct.Cl. 189, affirmed 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736, and in Maxwell et al. v. United States, 3 F.2d 906, 909–911. In affirming the Maxwell case, the Supreme Court, 271 U.S. 647, 46 S.Ct. 487, 70 L.Ed. 1130, held generally that a contractor must assume the risk of such obstacles in the performance of an obligation, the scope of which is clearly fixed by his contract.

Defendant's demurrer is sustained and the petition is dismissed as to Albert E. McKenzie, trustee in bankruptcy, and as to the third cause of action of the Standard Accident Insurance Company.

The case is remanded to the General Docket on the first and second causes of action alleged by plaintiff, Standard Accident Insurance Company. It is so ordered.

WHALEY, Chief Justice, and MADDEN and WHITAKER, Judges, concur.

JONES, Judge, took no part in the decision of this case.